No. 46,852

The State of Kansas, *Appellant,* v. Lewis W. Turner, *Appellee.*

(504 P. 2d 168)

Opinion filed December 9, 1972.

*Keith Sanborn,* county attorney, argued the cause, and *Vern Miller,* attorney general, and *Wallace Underhill,* deputy county attorney, were with him on the brief for the appellant.

*Robert V. Mulch,* of Wichita, argued the cause, and was on the brief for the appellee.

The opinion of the court was delivered by

Owsley, J.: This is an interlocutory appeal by the state from an order sustaining defendant's motion to suppress evidence. The issue raised involves the validity of the seizure of property not listed in a search warrant.

On the 6th day of April, 1972, the residence of Frank Bruner in Wichita, Kansas, was burglarized. Upon the return to his home and the discovery of the missing items (tan glass piggy bank, small wooden barrel bank, Kodak camera, and eight foreign silver coins), Bruner remembered seeing a 1964 red panel truck parked near his home at the approximate time of the burglary. Bruner drove around his neighborhood, and located the truck parked at a residence at 2117 North Kansas. He saw a black male run from the residence as he approached, so he went to the rear and noticed his tan glass piggy bank in the trash can. Bruner thereupon looked through the open rear door, and noticed his wooden barrel bank

sitting on the kitchen table. He immediately notified the police of his observations.

Shortly after receiving Bruner's call, a police officer filed an affidavit in support of an application for a search warrant. A search warrant was thereafter issued. Based upon a showing of probable cause, the court issued a warrant to search a residence located at 2117 North Kansas, for the items previously listed as stolen from Bruner.

At approximately 5:30 p. m. on the 6th of April, 1972, the officer and Bruner proceeded to the defendant's residence to execute the warrant. Upon arrival, the defendant was observed approaching the house and, due to information obtained by the officer that the defendant owned the truck and lived in the house, he was stopped and subsequently arrested.

In the process of searching for the stolen items, the officer picked up a stereo which was located on the north wall of the living room and looked under it. Upon lifting the stereo, the officer noticed that it was an ABC Rental, Muntz Stereo Unit, which he recalled being the same type recently stolen from Sarah Kirkendall on the 29th day of March, 1972. The officer immediately looked at the case file on that burglary, which contained the date of the burglary, the brand name of the stereo, and the stereo's serial numbers, which matched, and thereupon seized the stereo.

It took the officer and Bruner approximately one hour to locate the items listed in the warrant. All of the items were hidden in some manner. One of the banks and the billfold were located in a partition of the kitchen ice box. Pieces of the pottery bank were found in the backyard trash can, and the foreign coins were found in a drawer of the kitchen table. These items were found subsequent to the discovery of the stolen Muntz stereo.

During the course of the search the officer noticed a peculiarly large number of items scattered in plain view through the house. These items included electric signal flares with the city's brand on them, a school's desk bell, check books with non-resident's names on them, a billfold with an ID not matching that of the residents', a .22 caliber rifle on the kitchen table, a dismantled TV under the kitchen table, another TV by the kitchen table, a stereo on the living room floor, a partially dismantled revolver behind the living room couch, a cordless Victor adding machine on the front room

floor, an 8-track car stereo on the front room floor with the wires off, and a shotgun behind the bedroom door.

Upon completion of the search for the items listed on the search warrant, the officer decided to seize the items previously mentioned in order to check them against the police reports of recently stolen articles. This decision was based upon the fact that the items were scattered all over the house in plain view, obviously not in use, and missing cords and wires; that a stolen Muntz stereo and Bruner's stolen items had also been found in the house; and that due to the joint occupancy of the residence, the items might be removed if not immediately seized. In addition to the items taken at this time, the officer obtained a waiver from the other occupants of the home, and returned to seize other stolen items. Of the items seized, later investigation determined almost all of them to be stolen property.

The defendant was arrested and charged with the burglary of the Bruner residence and with obtaining control over stolen property. Of the items seized in the search of the defendant's residence, and other than the Bruner property, the second count encompassed only the Muntz stereo and its attached speakers.

On the 7th day of April, 1972, an officer met with the defendant in the city jail where the defendant was incarcerated pending his first appearance. The officer read the defendant's rights to him, and the defendant agreed to sign a waiver of his right to remain silent. Thereafter, the defendant admitted that he had purchased the stolen Muntz stereo from a friend at the time knowing that it was stolen.

On April 10, 1972, a complaint was filed, charging the defendant in Count One with burglary of the Bruner residence, and in Count Two with obtaining control over the Muntz stereo, an 8-track car stereo, and $45.00 in currency; the latter items belonging to ABC Rental. At defendant's preliminary hearing, on the 25th day of April, 1972, the magistrate discharged the defendant on Count One, and bound him over to district court to stand trial on Count Two. Defendant's oral motion to suppress was overruled, and on May 10, 1972, defendant waived arraignment and trial was set for May 22, 1972.

On May 16, 1972, the defendant filed a motion to suppress all of the evidence seized in the search. The defendant claimed that, in addition to the physical evidence seized in the search, if the court suppressed the physical evidence it must also suppress any state-

ments made by the defendant in reference to that evidence as fruit of the poisonous tree.

Defendant admitted the search warrant was proper and seizure of those items which the officer had reasonable cause to believe stolen was proper. However, defendant contended that seizure of other items based upon officer's mere suspicion vitiated the legality of the entire search. He therefore concluded that all of the physical evidence, including the Muntz stereo, and the defendant's statements, should be suppressed. The trial court sustained the defendant's motion, and ordered *all* of the physical evidence suppressed. In addition, the court suppressed the defendant's statements made in relation to the stereo, as fruit of the poisonous tree.

The state first contends that the seizure of the Muntz stereo was proper. We agree with this statement. In *State v. Yates*, 202 Kan. 406, 449 P. 2d 575, we held that an officer, while conducting a legal search pursuant to a search warrant, may lawfully seize other stolen goods found on the premises but not mentioned in the warrant. To the same effect is *State v. Bolen*, 205 Kan. 377, 469 P. 2d 422, where we said:

, "While the warrant issued by the magistrate or judge must describe the property to be searched for and seized (K. S. A. 62-1830), the fact the officer executing the warrant seizes an unlisted item does not convert the search to one of a *general exploratory nature* within the prohibition of the fourth amendment to the United States Constitution or § 15 of the Bill of Rights of the Kansas Constitution against unreasonable searches and seizures . . . The search, of course, must be directed in good faith toward the objects specified in the warrant; but if in the course of that search the officer discovers items not described that might have been seized in a search incident to a lawful arrest, such evidence may also be legally seized in the search pursuant to the warrant. (*Harris v. United States*, 331 U. S. 145, 91 L. Ed. 1399, 67 S. Ct. 1098; *Warden, Maryland Penitentiary v. Hayden*, supra; *Gurleski v. United States*, 405 F. 2d 253 [5th Cir. 1968], cert. denied, 395 U. S. 981, 23 L. Ed. 2d 769, 89 S. Ct. 2140; *United States v. Robinson*, 287 F. Supp. 245 [N. D. Ind. 1968].) . . ." (pp. 378, 379.)

In *Yates* and *Bolen* it appears there was a relationship between the property described in the warrant and the undescribed property which was seized. In the instant case there is no relationship between the stereo and the property described in the warrant. This distinction, in our judgment, does not invalidate the seizure of the stereo. This was the position of the court in *Aron v. United States*, 382 F. 2d 965 (8th Cir. 1967), where it was stated:

". . . We believe that where an officer is proceeding lawfully and making

a valid search under a properly issued search warrant and comes upon evidence of another crime being committed in his presence, he is entitled to seize the fruits thereof and testify to the violation he saw committed in his presence. . . ." (pp. 973, 974.)

Although these authorities support the seizure of the stereo, the trial court found that the whole of the search and seizure was vitiated by the seizure of some 35 other unlisted items. The trial court made its ruling in the following words:

"Now, the Court concludes, as a matter of law, that the seizure of the goods having a general character or general description similar to that which had been reported as stolen, in the quantity shown by the evidence in this case, was an unreasonable seizure. It makes illegal the entire search and seizure and renders the acts of the police officers in the execution of the search warrant, unlawful and the Court concludes that the evidence seized should be suppressed in this case; and the Court finds that the confession is a product and fruit of the illegal search and under the doctrine of the fruit of the poisonous tree. It is the fruit of the illegal search and the confrontation of the defendant with the possession of the Muntz Stereo set induced the confession or induced the statement wherein the admission was made that it was acquired with knowledge of its stolen character and so the confession is suppressed."

The state maintains the trial court's conclusion of law was erroneous. The state argues that it would be inconsistent with the purpose and intent of the Fourth Amendment to hold an otherwise legal search invalid because certain items seen in plain view during the course of that search were unreasonably seized. Further, since the state declared the intent not to introduce any of the property in evidence other than the stereo, it was irrelevant whether other items were unreasonably seized.

The issue was analyzed in *Anglin v. Director, Patuxent Institution*, 439 F. 2d 1342 (4th Cir. 1971), where the officers armed with a search warrant for 27 items, seized over 700 items. The court said:

"By virtue of the lawful warrant in their possession, the officers searching the Anglin trailer had a 'right to be in the position' to observe the entire contents of the trailer. Those items seized were discovered in the course of a lawful search. The testimony of Sergeant Donovan indicates that, in fact, many of the items were not only in plain view, but were thrust upon them by Mrs. Anglin. Once the privacy of the dwelling has been lawfully invaded, it *is senseless to require police to obtain an additional* warrant to seize items they have discovered in the process of a lawful search. 'There is no war between the Constitution and common sense.' Mapp v. Ohio, 367 U. S. 643, 657, 81 S. Ct. 1684, 1693, 6 L. Ed. 2d 1081 (1961). To so hold would again tempt the police to proceed without a warrant, for even now searches incident to arrest are not so confined. Chimel v. California, 395 U. S. 752, 89 S. Ct. 2034,

23 L. Ed. 2d 685 (1969); Terry .v. Ohio, 392 U. S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); Harris v. United States, 390 U. S. 234, 88 S. Ct. 992, 19 L. Ed. 2d 1067 (1968). If the search has not extended beyond the scope of the warrant and the officers chance upon items which they would have had probable cause to seize in the course of arrest, we think it serves the Fourth Amendment well to allow the seizure of those items for use as evidence at trial. See, United States v. Eagleston, 417 F. 2d 11 (10th Cir. 1969); United States v. Teller, 412 F. 2d 374 (7th Cir. 1969). To hold otherwise will again put a premium on search incident to arrest at the expense of the warrant procedure contemplated by the amendment itself. As Judge Learned Hand remarked in a pre-*Marron* decision: 'Once in, the question is whether the officer's added seizure was " 'unreasonable' " under the Fourth Amendment.' United States v. Old Dominion Warehouse, 10 F. 2d 736, 738 (2d Cir. 1926).

"Whether viewed in terms of probable cause or reasonableness, we think on the facts of this case the police officers had a duty to seize and take into protective custody the 700 items of personalty that were subsequently put on display at the Baltimore Police Station. . . ." (pp. 1347, 1348.)

This opinion pointed out that the basis for the seizure of unlisted items in a search warrant was reasonableness and probable cause, and continued with a recital of the facts on which it determined the seizure was valid.

The validity of a seizure of property not listed in a search warrant depends on the circumstances existing at the time of the seizure and the information available to the officer at the time of his decision to seize the property. Without repeating the facts previously stated herein we are satisfied that at the time of the seizure of the property the officer had probable cause, as distinguished from mere suspicion, to believe the property was stolen. We hold the seizure of the property within or beyond the scope of the warrant was valid.

Reversed and remanded.