**UNITED STATES of America, Plaintiff,**

v.

**Wanda Joyce LEE, Defendant.**

**Crim. No. 76–59.**

United States District Court,
E. D. Kentucky,
At Covington.

Feb. 23, 1977.

Eldon L. Webb, U. S. Atty., and James Arehart, Asst. U. S. Atty., Lexington, Ky., for plaintiff.

William C. Oldfield, Covington, Ky., for defendant.

## MEMORANDUM OPINION

SILER, District Judge.

Pursuant to Rule 41(f), Federal Rules of Criminal Procedure, the defendant has filed a motion to suppress evidence, to wit, items of silverware taken from the defendant's residence in Independence, Kentucky, on November 15, 1976, in a search conducted pursuant to a federal search warrant. After a hearing, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

On November 15, 1976, Special Agent. Gerald Gantenbein of the Bureau of Alcohol, Tobacco & Firearms, U.S. Treasury Department, filed an affidavit for a search warrant before U.S. Magistrate J. Gregory Wehrman. In it, he alleged that at the Wanda Lee residence described, there were certain firearms, to wit, miscellaneous rifles, shotguns and hand guns, papers or records pertaining to the acquisition and disposition of firearms being possessed in violation of 18 U.S.C. § 922(j).

The grounds alleged for the issuance of the warrant were that on November 15, 1976,

I received the following information from a reliable confidential informant who has demonstrated his reliability in the past by providing information which has resulted in several arrests, the seizure of illegal firearms, narcotics and stolen property. The informant stated that in the past five days, the informant observed a subject named Wanda Lee who resides at 270 Webster Lane, Independence, Kentucky, in possession at her residence of a large quantity of stolen property that was taken in residential burglaries in the State of Ohio. The informant further related that amongst this property there were several stolen firearms which had been transported from the State of Ohio to the State of Kentucky. The firearms were described as a miscellaneous lot of long guns and hand guns totaling approximately fifteen in number. Several of these firearms are shotguns of varying descriptions and calibers. The informant also related that it is common practice for Wanda Lee to transport stolen firearms in the trunk of various automobiles available to her and that she sells or disposes of them from the trunk of the car. These firearms were personally seen by the informant at the residence of Wanda Lee, 270 Webster Lane, Independence, Kentucky.

On November 15, 1976, a surveylance (sic) of the premises showed two vehicles parked on the premises. Vehicle No. 1 is

described as a 1974 Oldsmobile bearing Kentucky license # FJD 861, and vehicle No. 2, a 1971 Chevrolet bearing Kentucky license # FJD 862. A check of the Kenton County Registrar shows that both of the vehicles are registered to Wanda Lee, Box 270 Webster Road, Independence, Kentucky.

A search warrant was issued on the same day by Magistrate Wehrman directing the execution by "any Special Agent of the Bureau of Alcohol, Tobacco & Firearms or any other authorized person." It called for the search to be conducted for the firearms, papers, or records pertaining to the acquisition and disposition of firearms, as described in the affidavit for the search warrant, but did not call for a search for any other stolen property.

The search was commenced the same day at 3:00 P.M. and lasted until almost midnight of the same evening. Involved in the execution of the search warrant were Special Agent Gantenbein and other special agents with the Bureau of Alcohol, Tobacco & Firearms and one State Police officer, Sgt. Heath. As a result of the search, a large quantity of silverware, with total value estimated at $39,145.29, and nine firearms were seized and taken from the premises. After the search was completed, Special Agent Gantenbein filed his inventory pursuant to Rule 41(d) with the United States Magistrate, but that inventory only included the firearms. Subsequently, after the defendant had moved the Court to suppress, alleging, among other things, that a complete inventory was not filed, another inventory was filed on January 12, 1977, listing the silverware taken.

Upon execution of the search warrant, almost immediately upon entering the premises, Special Agent Gantenbein saw in clear view in the laundry room the large quantity of silverware. On some of the items were found initials which did not correspond with those of Wanda Lee. Included in those initials were the following letters: "H," "LGG," "W," "WBH," "LM," "M," "MEM," "A," "ABP," "D," "E," "KW," "CSW," "DHA," "LHW," "HM,"
"EAA," "MAL," "LVM," "HD," "B," "SW," "HKC," "Y," "AB," and "HJ." Some of these items were sterling silver. There were in excess of 200 separate items of silver taken, mostly flatware, but including candleholders, dishes, bowls, pitchers, large trays, a silver coffee pot, silver goblets, a silver service and several carving sets. These were all items not ordinarily seen in a person's laundry room.

After the agents had seen the silver, they found in the fireplace scraps of paper indicating that the silver belonged to a lady in Virginia. While the agents were still on the premises, the Kentucky State Police made telephone calls to Waynesboro, Virginia, and found that some two days earlier, the residence of a lady had been burglarized in that area and she had lost some silver in the burglary. Thereafter, the items listed in the two inventories were taken from the premises, with the firearms being taken by the federal agents, and the silver and other items taken by the Kentucky State Police. As a result, the indictment in this case was returned, charging the defendant, Wanda Joyce Lee, with a violation of 18 U.S.C. § 2315, knowingly receiving stolen property of a value in excess of $5,000.00, which had been transported in interstate commerce from Virginia to Kentucky. As far as can be determined at this time, no indictments have been returned in this Court pertaining to the firearms, nor have any state proceedings been instituted concerning the receipt of stolen property.

## CONCLUSIONS OF LAW

The defendant has raised several questions about the sufficiency of the warrant and the search. They are as follows:

1. The warrant is defective because it was not directed to a specific federal agent.

2. The inventory filed was defective.

3. The silverware discovered were beyond the scope of the search.

4. The failure of the affidavit to allege probable cause for the search warrant.

5. The state officer was not authorized to participate in the search and, therefore,

any items which were seized by him must be suppressed.

Some of these issues can be disposed of easily, whereas the others give the Court a great deal of trouble. They will be discussed one at a time.

## FAILURE TO NAME THE EXECUTING OFFICER

■ Under Rule 41(c), Fed.R.Crim.P., a search warrant "shall be directed to a civil officer of the United States authorized to enforce or assist in enforcing any law thereof or to a person so authorized by the President of the United States." The defendant asserts that because no person was specifically named to execute the warrant, it is void and, therefore, the items seized as a consequence must be suppressed. In support of her position, the defendant cites *United States v. Soriano,* 482 F.2d 469 (5th Cir. 1973). In that case, however, the search warrant failed to name any person; instead, the name of the person to execute the search warrant was left completely blank and neither name nor title appeared therein. However, the Court held that since it was executed by a Special Agent of the Bureau of Narcotics, who was ordered orally by the Magistrate to execute the warrant, and since this special agent identified himself at the premises searched, all relevant interests were protected. In the case at hand, the search warrant was directed to officers by title rather than name, and those officers are in fact civil officers of the United States authorized to enforce law. *Cf. United States v. Andrews,* 347 F.2d 207 (6th Cir.), *cert. denied,* 382 U.S. 956, 86 S.Ct. 431, 15 L.Ed.2d 360 (1965). Additionally, Public Laws 90–618 and 351 provide for the administration and enforcement of these firearms laws to be in the Treasury Department, in which the Bureau of Alcohol, Tobacco & Firearms is included. See 18 U.S.C.A. § 921, Historical Note. Moreover, in *United States v. Gannon,* 201 F.Supp. 68, 69 (D.Mass.1961), a search warrant was directed "to any U.S. Marshal, any of his deputies, or any authorized person," and was upheld in spite of the fact that it

was executed by a special agent of the Internal Revenue Service. Judge Wyzanski held that a private person has no standing to complain of the failure of the correct officer to execute a search warrant; it is a command to an officer, who has the responsibility to see that the law is followed in the execution of a search warrant. Therefore, this Court finds that the directive on the search warrant met the requirements of Rule 41(c).

## IMPROPER RETURN ON INVENTORY

■ Pursuant to Rule 41(d), the return of the search warrant "shall be made promptly and shall be accompanied by a written inventory of any property taken." The return for the silverware, as stated, was not effected until almost two months later. However, the return of a search warrant is ministerial and any failure therein does not void the warrant, unless the defendant can show any prejudice because of this. See *United States v. Moore,* 452 F.2d 569 (6th Cir. 1971), *cert. denied,* 407 U.S. 910, 92 S.Ct. 2435, 32 L.Ed.2d 684 (1972). Inasmuch as no prejudice has been shown here, as, unlike *Moore,* the tardy inventory has been filed prior to trial, the motion to suppress based upon a faulty inventory will be overruled.

## SEARCH BEYOND THE SCOPE OF THE WARRANT

In the case of *United States v. Gray,* 484 F.2d 352 (6th Cir. 1973), *cert. denied,* 414 U.S. 1158, 94 S.Ct. 916, 39 L.Ed.2d 110 (1974), while executing a state search warrant for intoxicating liquor, police officers came upon two rifles in a clothes closet. They were taken downstairs to the business area of the building and the serial numbers copied before the firearms were placed back in the closet. Later, the serial numbers were run through the National Crime Information Center computer and listed as identifying stolen firearms. Based upon this information, the officers procured a second warrant for the rifles and subsequently seized them. The Court held there that the removal of the rifles from the closet and

the copying down of the serial numbers were an illegal seizure. That case has since been distinguished because the rifles there were not contraband and the officers had no reason to believe that they were stolen. Thus, where officers were executing search warrants for marijuana, *United States v. Chapman,* 549 F.2d 1075 (6th Cir. 1977), or gambling records, *United States v. Truitt,* 521 F.2d 1174 (6th Cir. 1975), and where sawed-off shotguns were seized in plain view, the seizures were upheld because the sawed-off shotguns were contraband. Actually, a sawed-off shotgun may not be contraband, unless it is in violation of 26 U.S.C. § 5861, such as not having been registered in the National Firearms Registration and Transfer Record or having its serial number removed. Admittedly, a sawed-off shotgun is more likely to be contraband than a rifle, but such weapon may be properly registered and possessed under Chapter 53, Title 26, United States Code.

 Thus, one must look at the totality of the circumstances surrounding the seizure of an item not named in the search warrant. For instance, an officer may seize that which is in plain view when he inadvertently comes across such an item incriminating the accused, but it must be "immediately apparent to the police that they have evidence before them." *Coolidge v. New Hampshire,* 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564, 583 (1971), cited in *United States v. Gray, supra* at 355. Although the silverware here cannot be classified as contraband per se, nevertheless, its presence in the laundry room, the large quantity of it, and the unusual grouping of patterns and initials would lead an officer to look closely at them when they are in open view. Furthermore, as the officers were authorized under the search warrant to look for papers or records, they had an obvious right to look in the fireplace when they found the other papers pertaining to the silverware. Then, based upon this information, and before moving the silver, they made a telephone investigation to determine if the silver was stolen. At that point, they had probable cause to seize the silver and take it from the premises.

Had it been a few pieces of silver in the kitchen, dining room or some other appropriate location, with no initials engraved thereon, or if the initials had been the defendant's, circumstances would have been quite different. For the reasons as stated herein, the seizure of the silverware under this warrant was not unreasonable under the language in *Gray.* See also *United States v. Alloway,* 397 F.2d 105 (6th Cir. 1968).

## PROBABLE CAUSE TO ISSUE WARRANT

This question gives the Court a great deal of trouble. To be certain, it was said in *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965):

[A]ffidavits for search warrant, such as the one involved here, must be tested and interpreted by magistrates in courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

 Moreover, if a magistrate is provided with sufficient information to enable him to make a considered judicial determination of probable cause, a reviewing court will pay substantial deference to that determination. See *Aguilar v. Texas,* 378 U.S. 108, 111, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). But *Aguilar* and its successor, *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), require a "two-pronged" test. First, the affidavit must set forth some of the underlying circumstances forming the basis for the informant's conclusion that there is illegal activity or evidence thereof on the premises, and, second, it must state facts which give some assurance that the informant is a credible person.

■ Although the defendant argues that the second prong has not been met here, the Court is of the opinion that the reliability and credibility of this informant is shown by the fact that he has provided information in the past which has resulted in arrests. See *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). In addition, the informant had seen the firearms and described them to some degree. Thus, this detail lends credence to the credibility of the informant. See *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

■ However, the underlying circumstances forming the basis for the informant's conclusion that there was stolen property on the premises of Wanda Lee is suspect. This is a different situation from those in which the informant makes a conclusion that the subject of the search was in possession of narcotics, *Jones v. United States, supra*; nontaxpaid distilled spirits, *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); or the possession of firearms by a person known to be a convicted felon, *United States v. Combs,* 468 F.2d 1390 (6th Cir. 1972), *cert. denied,* 411 U.S. 948, 93 S.Ct. 1924, 36 L.Ed.2d 409 (1973). In each of those instances, the possession alone of the items involved is sufficient to form a basis for probable cause to believe the crime is being committed. Of course, there is always the possibility that the narcotics were legally purchased, or the whiskey had the tax paid thereon, or the convicted felon had authority to possess the weapons, but one must deal with probabilities.

On the other hand, it is another matter when one alleges that on certain premises are located *stolen* property. Moreover, the affidavit here alleges that the property was taken from "residential burglaries in Ohio" and it further alleges that there were several stolen firearms which had been transported from Ohio to Kentucky. There is nothing here to indicate that the possession of the firearms by Wanda Lee was illegal, inasmuch as there was no allegation that she had ever been convicted of a felony.

Moreover, the possession of stolen guns or stolen property would only be a state offense, not a federal one, unless the property had been transported in interstate commerce after the theft.

In the hearing held in this case, the Court stated that it found probable cause for the issuance of the warrant. However, on further consideration of the language in the affidavit, the Court finds that the language was too conclusionary and does not provide the circumstances underlying the information from the informant to believe it was credible. To be sure, as the United States has alleged, the information is based upon personal observation of the informant. See, *e. g., United States v. Viggiano,* 433 F.2d 716 (2d Cir. 1970), *cert. denied,* 401 U.S. 938, 91 S.Ct. 934, 28 L.Ed.2d 219 (1971). However, the informant could not tell by personal observation alone whether the firearms in question were stolen or had been transported from Ohio to Kentucky.

A case in point is *United States v. Karathanos,* 531 F.2d 26 (2d Cir.), *cert. denied,* 428 U.S. 910, 96 S.Ct. 3221, 49 L.Ed.2d 1217 (1976). There, in an affidavit for a search warrant, the informant alleged that there were illegal aliens in a particular restaurant in New York. The Court held that this language precluded the Court from determining whether the informant reached his conclusion in a reliable manner. Thus, the Court reasoned, to infer the informant reached his conclusion through admissions by the aliens rather than through rumor or assumptions based upon observations "would be to permit a warrant to issue on the basis of a degree of speculation proscribed by the *Aguilar-Spinelli* test." *Id.* at 31. Similarly, in the case at hand, one can only speculate as to how the informant came to his conclusions that the firearms had been stolen and been transported from Ohio to Kentucky. The further conclusionary language that there was on the premises stolen property which had been taken from burglaries in Ohio may be read in conjunction with the language about the firearms, to imply that the firearms were stolen in the burglaries. However, the only

way that the informant could have so concluded to provide probable cause would be through personal participation in the burglaries or an admission by Wanda Lee as to where they came from. Neither of these was stated in the affidavit. Therefore, it is just as likely that the informant received his information from a rumor at a local bar.

Clearly, the information proved to be trustworthy after the execution was effected, as items of silver taken in burglaries from Virginia was found. On the other hand, there is no indication that any of the items found in the house had been taken from burglaries in Ohio or that the firearms had originated in any state other than Kentucky. However, probable cause is not determined by results, but is based upon what facts and circumstances are available at the particular time of the issuance of the warrant. See, *e. g., Byars v. United States,* 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520 (1927); *United States v. Nicholson,* 303 F.2d 330 (6th Cir.), *cert. denied,* 371 U.S. 823, 83 S.Ct. 43, 9 L.Ed.2d 63 (1962). Because probable cause was not shown in the affidavit, the motion to suppress will be sustained.

### EXECUTION BY A STATE OFFICER

Assuming arguendo that probable cause was established, the Court also finds fault with the participation by the state officer in the execution of a federal search warrant. Clearly, the search warrant called for the execution by a federal officer. Moreover, Special Agent Gantenbein asserted that he, not a state officer, originally saw the silver. However, the state officers conducted all of the investigation concerning the silver and carried the silver from the premises. One of the arguments by the United States in the late filing of the inventory on the silver was that the federal agents did not take these from the premises and, therefore, the federal government provided a proper return on the inventory of all the items taken, that is, the firearms.

Participation by a state officer is precluded. *United States v. Sanchez,* 509 F.2d 886 (6th Cir. 1975). Of course, in that case, it was an execution of a state search warrant,

and the federal officers went along because the state officers had been told that there might be some illegal explosives on the premises. The result was that the federal officer found some illegal explosives, which were later the subject of a federal prosecution. In the case at hand, it involved a federal search warrant with participation by a state officer, resulting in a federal prosecution, but not under the cognizance of the agency which executed the warrant, that is, the Bureau of Alcohol, Tobacco & Firearms. Instead, it is a Federal Bureau of Investigation case. That is not enough of a distinction in the mind of the Court to allow this evidence to be introduced, inasmuch as the State Police had total charge of the silver at the time of the search and thereafter. If it were not for the *Sanchez* case, this Court would be inclined to rule that the search was legal even though a state officer participated, but the Court feels bound by that decision under the facts and circumstances as outlined herein. See also *United States v. Gardner,* 537 F.2d 861 (6th Cir. 1976).