**The PEOPLE of the State of Colorado,
Plaintiff-Appellant,**

v.

**Robert Lee FRANKLIN,
Defendant-Appellee.**

**No. 81SA285.**

Supreme Court of Colorado,
En Banc.

Feb. 8, 1982.

R. Dale Tooley, Dist. Atty., O. Otto Moore, Asst. Dist. Atty., Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., John R. Olsen, Deputy Dist. Atty., Denver, for plaintiff-appellant.

Lozow & Lozow, Charles W. Elliott, Gary Lozow, Denver, for defendant-appellee.

QUINN, Justice.

In this interlocutory appeal the People challenge an order suppressing a gold watch[1] seized during the execution of a search warrant which did not include the watch as one of the articles to be seized. The district court suppressed the watch on the ground that the People failed to establish an adequate nexus between the watch and the specific criminal activity being investigated under the warrant. We conclude that the court applied an inappropriate standard in suppressing the evidence and, accordingly, we reverse and remand with directions.

I.

The defendant is charged in a one-count information with criminal attempt to commit felony-theft, sections 18–2–101 and 18–4–401, C.R.S. 1973 (1978 Repl. Vol. 8), against Miller's Mutual Insurance Association between January 3 and March 25, 1980, in Denver, Colorado. The charge stems from a claim made by the defendant to the insurance company for a loss due to the alleged theft of the gold watch from his residence at 3737 Fillmore Street in Denver. The watch was seized from the defendant's home during a search pursuant to warrant for stolen property believed to be located therein.

On March 12, 1980, Detective Roger Comstock filed with the Denver County Court an affidavit which, in essence, recounted the following facts. Earlier that day Ms. Velma Lewallen, in the course of a police interview, admitted that she was present during the commission of a theft in Black Hawk, Colorado, on February 18, 1980, and during a burglary at 4920 East Missouri Avenue, Denver, Colorado on March 6, 1980. She stated that the Black Hawk theft involved numerous rings which were presently located at the defendant's home at 3737 Fillmore Street in Denver. A Denver detective contacted the Gilpin County Sheriff's office and verified that there were 35 rings, a belt buckle and a coral bracelet taken in the theft. A check of Denver police records also indicated that on March 6, 1980, a burglary was reported at 4920 East Missouri Avenue, during which various items had been stolen from the living room, bathroom and bedroom areas of the home. Ms. Lewallen told Detective Comstock that the following property taken in the burglary was present at the defendant's home: a sea shell hanging lamp, a cassette portable stereo, three cameras, a tapestry of abstract design, a pair of roller skates, and several pictures.

Based on Detective Comstock's affidavit, a Denver County Judge issued a search

---

1. Although the court also suppressed a silver watch, three rings, $46 in cash, and the bags which contained these articles, only the gold watch has any evidentiary significance to the charge presently pending against the defendant.

warrant authorizing a search of the defendant's residence for the property reportedly taken in the Black Hawk theft and the East Missouri Avenue burglary. The jewelry listed in the search warrant consisted of 35 rings, which were specifically described by stone setting, and one coral bracelet.

Upon the issuance of the warrant Detectives Comstock and Scanlon, accompanied by four other officers and Ms. Lewallen, went to the defendant's residence to conduct the search. During the search Ms. Lewallen informed Detective Comstock that "part of [her] job each day was to go around shoplifting" and she pointed out various other items of property stolen in other crimes. These objects were seized along with some of the specific property described in the warrant.[2]

During the execution of the warrant Detective Scanlon opened a crockpot in the kitchen. Located inside was a locked bag with "United Bank of Boulder" printed on it. The detective cut open the bag and found inside two smaller bags labeled with the name "Geoffrey Beene". Since the name held no significance for him or for Detective Comstock, Scanlon opened the smaller bags. Inside the bags were a gold watch, a silver watch, three rings and $46 in cash. The detective seized these objects because, as he testified at the suppression hearing, they "appeared to be hidden for a purpose" and "we confiscated them to determine ownership of the bags and things in the bags based on the names on the outside."

The defendant later was charged with attempted felony-theft based on his allegedly false claim to the insurance company regarding the theft of the gold watch from his home. Following a hearing on the defendant's motion to suppress, the court suppressed the items recovered from the crockpot because the People had failed to establish a nexus between the articles seized and the suspected criminal conduct which gave rise to the issuance of the warrant, namely, the Black Hawk theft and the East Missouri Avenue burglary.[3] In our view, the court's suppression ruling is based upon an unduly restrictive standard for plain view seizures.

## II.

Standards governing seizure of objects not described in a search warrant have their genesis in *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), and *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). In

2. While the testimony at the suppression hearing does not clearly disclose every article which, although not described in the search warrant, Ms. Lewallen indicated had been stolen, it appears that the following fall into that category: a silver bowl, an antique clarinet, four pictures, a blue blanket, and two stereo speakers. The officers also seized some other articles not listed in the warrant after making a serial number check of the items and determining that they were stolen. Of those articles described in the warrant, it appears that only the cassette stereo and a piece of shell from the lamp were seized.

3. The court's ruling included the following findings: the officers executed the warrant in order to obtain evidence relating to the Black Hawk theft and the East Missouri Avenue burglary and they were unaware of any insurance fraud at that time; when the articles inside the "Geoffrey Beene" bags were seized, the officers were aware that these objects were not enumerated in the search warrant and they also knew that these items were not stolen in the Black Hawk theft or East Missouri Avenue burglary; the items seized from the crockpot well could have been the defendant's personal property, especially since "Geoffrey Beene" is the name of a well known cologne and aftershave lotion and this name could not reasonably have led the officers to believe that the contents of the bag belonged to someone other than the defendant. Concerning the court's observation with respect to the name "Geoffrey Beene", we fail to see how that name bears any significance to the issue involved in this case. No one disputes the right of the officers to look into the crockpot and open the bags inside the crockpot and examine their contents. *See* note 6, *infra*. The issue whether the contents of the bags could properly be seized under the plain view doctrine should no more be controlled by the name appearing on the *outside* of the bag than by whether "Geoffrey Beene" is or is not the trade name of a well known men's toiletry. Rather, the appropriate consideration is whether at the time of seizure the officers had probable cause to believe the *contents* of the bag were incriminating. *See* Section II, *infra*.

*Warden v. Hayden, supra,* the Supreme Court rejected any distinction between contraband, fruits or instrumentalities of crime on the one hand, and mere evidence of criminal activity on the other, reasoning that "[p]rivacy is disturbed no more by a search directed to a purely evidentiary object than it is by a search directed to an instrumentality, fruit or contraband." 387 U.S. at 301–02, 87 S.Ct. at 1647, 18 L.Ed.2d at 789. However, in rejecting the "mere evidence" limitation on lawful searches, the Court noted:

"There must, of course, be a nexus—automatically provided in the case of fruits, instrumentalities or contraband—between the item to be seized and criminal behavior. Thus in the case of 'mere evidence,' probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction." 387 U.S. at 307, 87 S.Ct. at 1650, 18 L.Ed.2d at 792.

*Coolidge v. New Hampshire, supra,* expanded on the requirements for a plain view seizure of objects not described in the warrant:

"It is well established that under certain circumstances the police may seize evidence in plain view without a warrant. But it is important to keep in mind that, in the vast majority of cases, *any* evidence seized by the police will be in plain view, at least at the moment of seizure. The problem with the 'plain view' doctrine has been to identify the circumstances in which plain view has legal significance rather than being simply the normal concomitant of any search, legal or illegal.

"An example of the applicability of the 'plain view' doctrine is the situation in which the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character. . . .

"What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across the piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification—whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused—and permits the warrantless seizure. Of course, the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." 403 U.S. at 465–66, 91 S.Ct. at 2037–38, 29 L.Ed. 2d at 582–83.

The Court in *Coolidge* did not elaborate upon the proposition that an article in plain view may be seized when it is "of incriminating character." However, the Court's statement that the seizure may occur without the additional step of obtaining a search warrant, when "it is immediately apparent to the police that they have evidence before them," clearly implies that justification for the warrantless seizure is nothing more and nothing less than probable cause to believe that the article to be seized is connected with criminal behavior.

■ Notwithstanding the Supreme Court's rejection of the "mere evidence" limitation on seizures in *Warden v. Hayden, supra,* and its approval of the plain view seizure for any article "of incriminating character" in *Coolidge v. New Hampshire, supra,* some of our decisions have taken an unduly restrictive approach to plain view seizure during a search pursuant to warrant. Thus, in *People v. LaRocco,* 178 Colo. 196, 496 P.2d 314 (1972), upon which the district court principally relied in its suppression ruling, we upheld the suppression of an allegedly forged Illinois driver's license and a blank Illinois driver's license form, both of which were seized in plain view during the execution of a search warrant for stolen property, on the ground that the driver's license and the blank form were not "connected with the criminal activity

being investigated under the search warrant." 178 Colo. at 200, 496 P.2d at 316.[4] *See also People v. Piwtorak*, 174 Colo. 525, 484 P.2d 1227 (1971) (seizure of twenty dollar bill upheld on alternate ground that it was "closely connected with the crime for the investigation of which the search warrant was issued.") To the extent that these cases might be interpreted to prohibit a plain view seizure of an article—whether "mere evidence" or contraband, fruit or instrumentality—because the article is unrelated to the criminal activity underlying the search warrant, they are expressly disapproved. Rather, the appropriate standard, which we believe is consistent both with the rejection of the "mere evidence" limitation in *Warden v. Hayden, supra,* and the formulation of the plain view doctrine in *Coolidge v. New Hampshire, supra,* is one of probable cause to believe the article is incriminating. Stated more specifically, the officer seizing the article must have present knowledge of facts which establish a reasonable nexus between the article to be seized—whether "mere evidence" or other-

wise[5]—and criminal behavior; the criminal behavior, however, need not relate to the criminal activity which gave rise to the issuance of the warrant.

A stricter standard limiting seizures only to evidence related to the criminal activity underlying the warrant results in the anomaly of granting the police "less authority with respect to objects discovered in search warrant execution than as to items found by other means." 2 *W. LaFave, Search and Seizure* § 4.11 at 168 (1978). On the other hand, a more lenient standard "would produce the curious result that unnamed items could be seized on the spot notwithstanding the fact that even on the knowledge then possessed by the seizing officer a warrant for those materials could not be obtained." *Id.* The "reasonable nexus" standard which we herein adopt represents a realistic accommodation of both the legitimate needs of law enforcement and the privacy interest of the citizen. It has been applied by numerous courts in varied contexts without any added condition that the article seized

---

4. In *LaRocco,* the court relied to a great extent on the concurring opinion of Justice Stewart in *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). In *Stanley,* which was decided before *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), Georgia police officers, in executing a search warrant for evidence of bookmaking activities, found films in the defendant's bedroom. Using a projector and screen located in the defendant's home, the officers viewed the films and concluded they were obscene. The defendant thereafter was charged with possession of obscene material in violation of Georgia law. The Supreme Court, without addressing the search and seizure issue, relied upon the First Amendment, as applicable to the state under the Fourteenth Amendment, to invalidate a state statute making private possession of obscene material a crime. In contrast, Justice Stewart in his concurring opinion did address the search and seizure issue and found it to be an unconstitutional exploratory search. However, he carefully noted that his analysis was directed to the exploratory character of the search and not to the scope of the plain view doctrine:

"This is not a case where agents in the course of a lawful search came upon contraband, criminal activity, or criminal evidence in plain view. For the record makes clear that the contents of the films could not be determined by mere inspection. And this is

not a case that presents any questions as to the permissible scope of a search made incident to a lawful arrest. For the appellant had not been arrested when the agents found the films. After finding them, the agents spent some 50 minutes exhibiting them by means of the appellant's projector in another upstairs room. Only then did the agents return downstairs and arrest the appellant." 394 U.S. at 571, 89 S.Ct. at 1251, 22 L.Ed.2d at 553.

Under these circumstances it appears that *LaRocco's* reliance on Justice Stewart's concurrence in *Stanley* was misplaced.

5. A rule defining the propriety of a plain view seizure in terms of the contraband-mere evidence distinction is bound to prove unmanageable. What is contraband, fruit or instrumentality in one case may be mere evidence in another. Thus, if following a seizure of stolen property a defendant is charged with the crime of theft, the seized article, in the context of that charge, would be considered a fruit. In the pending case, where the defendant is accused of attempted theft, the gold watch has evidentiary significance only. We, however, do not believe such tenuous distinctions should control the propriety of a plain view seizure, as long as there is probable cause to believe the article is of an incriminating character.

relate to the criminal conduct being investigated under the warrant. *See, e.g., United States v. Lee*, 427 F.Supp. 318 (E.D.Ky. 1977) (reasonable nexus where, during execution of search warrant for firearms, officer saw large quantity of silverware of unusual design located in laundry room); *United States v. Hamilton*, 328 F.Supp. 1219 (D.Del.1971) (reasonable nexus for seizure of shotgun during execution of warrant for stolen property); *Klenke v. State*, 581 P.2d 1119 (Alaska 1978) (reasonable nexus for seizure of stolen property unrelated to crime investigated under warrant); *Dugan v. State*, 130 Ga.App. 527, 203 S.E.2d 722 (1974) (reasonable nexus for seizure of stolen property during execution of search warrant for marijuana); *People v. Caruso*, 2 Ill.App.3d 80, 276 N.E.2d 112 (1971) (reasonable nexus for seizure of illegal gambling paraphernalia during execution of warrant for stolen property); *State v. Turner*, 210 Kan. 836, 504 P.2d 168 (1972) (reasonable nexus for seizure of stolen property unrelated to thefts investigated under warrant); *Commonwealth v. DeMasi*, 362 Mass. 53, 283 N.E.2d 845 (1972) (reasonable nexus for seizure of stolen property unrelated to robbery being investigated under warrant); *State v. Streitz*, 258 N.W.2d 768 (Minn.1977) (reasonable nexus for seizure of stolen property not particularly described in warrant for other stolen property); *see also People v. Torand*, Colo., 622 P.2d 562 (1981) (plain view seizure during consent search requires nexus between item seized and criminal behavior unrelated to criminal activity precipitating search).

### III.

■ In its suppression ruling the court concluded that the People failed to establish a reasonable nexus between the articles seized from the "Geoffrey Beene" bags—one gold watch, one silver watch, three rings and $46 in cash—and the criminal activity being investigated under the search warrant—that is, either the Black Hawk jewelry theft on February 18, 1980, or the East Missouri Avenue burglary on March 8, 1980. Because the standard applied by the court was unduly restrictive, it is appropriate to remand the case in order to permit the parties to offer evidence directed to the proper standard set forth in Section II, *supra*.[6]

■ In resolving the suppression issue on remand the court must consider all the circumstances immediately preceding the seizure, including such factors as: whether the articles seized were similar or dissimilar to other property particularly described in the warrant as stolen or to other items already discovered during the search as stolen; *see, e.g., Commonwealth v. DeMasi, supra; Commonwealth v. Jackson*, 227 Pa.Super. 1, 323 A.2d 799 (1974); *State v. Johnson*, 17 Wash.App. 153, 561 P.2d 701 (1977); whether the quantity and placement of the property were such that the property obviously was not on the premises for ordinary use, *see, e.g., United States v. Golay, supra; United States v. Lee, supra; Dugan v. State, supra; State v. Streitz, supra*; and whether Ms. Lewallen or others present at the scene offered any information about the seized property or, in contrast, were unable to identify it as stolen,[7] *see, e.g., State v. Scigliano*, 120 Ariz. 6, 583 P.2d 893 (1978);

---

**6.** The parties concede that the contents of the "Geoffrey Beene" bags were discovered during the course of a permissible search for numerous articles of jewelry particularly described in the warrant. It is also conceded that the officer had no reason to anticipate the discovery of the gold watch and other suppressed items during the execution of the warrant. Thus, for purposes of the plain view doctrine, there was a prior valid intrusion into the defendant's residence and the discovery of the articles was inadvertent. The critical issue upon remand is whether the "reasonable nexus" requirement for a valid plain view seizure also was satisfied.

**7.** At one point in her suppression testimony Ms. Lewallen stated that when Detective Scanlon displayed the articles removed from the crockpot on a counter in the kitchen, she recognized the three rings as those which she and Stephanie O'Conner had stolen in Black Hawk. Later, she testified to having told Detective Scanlon that she previously saw the rings at the defendant's home on his dresser. What is of some significance to a resolution of this matter on remand is not whether Ms. Lewallen identified the rings as stolen in the Black Hawk theft but whether during the course of the search she made statements to the officers giving them reasonable cause to believe the rings

*People v. Superior Court of Marin County,* 25 Cal.3d 67, 598 P.2d 877, 157 Cal.Rptr. 716 (1979).

■ One last point bears consideration. The People argue that, due to the amount of stolen property discovered during the execution of the warrant, the defendant's residence constituted a receptacle for stolen property and, on that basis alone, the "reasonable nexus" requirement was satisfied. The People's argument, however, proves too much. Taken to its logical extreme, it would permit the seizure of any items on the premises not clearly identified as belonging to the defendant. In recognizing a plain view exception to the warrant requirement, we must not ignore the fundamental reasons underlying its existence.[8] A police officer making a plain view seizure of an article not particularly described in the warrant must be able to point to facts and circumstances which establish a rational link between the item seized and criminal behavior.

The ruling is reversed and the cause is remanded for further proceedings consistent with the views expressed herein.

or other articles found in the crockpot were stolen.

8. "The rationale for the 'plain view' exception is evident if we keep in mind the two distinct constitutional protections served by the warrant requirement. First, the magistrate's scrutiny is intended to eliminate altogether searches not based on probable cause. The premise here is that *any* intrusion in the way of search or seizure is an evil, so that no intrusion at all is justified without a careful prior determination of necessity.... The second, distinct objective is that those searches deemed necessary should be as limited as possible. Here, the specific evil is the 'general warrant' abhorred by the colonists, and the problem is not that of intrusion *per se*, but of a general, exploratory rummaging in a person's belongings.... The warrant accomplishes this second objective by requiring a 'particular description' of the things to be seized.

"The 'plain view' doctrine is not in conflict with the first objective because plain view does not occur until a search is in progress. In each case, this initial intrusion is justified by a warrant or by an exception such as 'hot pursuit' or search incident to a lawful arrest, or by an extraneous valid reason for the officer's presence. And, given the initial intrusion, the seizure of an object in plain view is consistent with the second objective, since it does not convert the search into a general or exploratory one. As against the minor peril to Fourth Amendment protections, there is a major gain in effective law enforcement. Where, once an otherwise lawful search is in progress, the police inadvertently come upon a piece of evidence, it would often be a needless inconvenience, and sometimes dangerous—to the evidence or to the police themselves—to require them to ignore it until they have obtained a warrant particularly describing it." *Coolidge v. New Hampshire*, 403 U.S. 443, 467–68, 91 S.Ct. 2022, 2038–39, 29 L.Ed.2d 564, 583–84 (1971).