Robert Lee FRANKLIN,
Defendant-Appellant,

v.

The PEOPLE of the State of Colorado,
Plaintiff-Appellee.

No. 83CA1169.

Colorado Court of Appeals,
Div. III.

Sept. 18, 1986.

Rehearing Denied Oct. 30, 1986.

Certiorari Denied (Franklin)
March 9, 1987.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Robert M. Petrusak,

**134**

Asst. Atty. Gen., Denver, for plaintiff-appellee.

Lozow, Lozow & Elliott, Gary Lozow, Charles W. Elliott, Denver, for defendant-appellant.

KELLY, Judge.

The defendant, Robert Lee Franklin, appeals from the judgment of conviction entered upon a jury verdict finding him guilty of attempted theft. He contends, among other things, that the trial court erred: (1) in denying his motion to suppress, (2) in ruling that the trial court's ex parte communication with the jury was harmless error, and (3) in ruling that a seven-week delay did not deprive the defendant of a speedy trial. We affirm.

The facts leading up to these charges were fully set forth in *People v. Franklin,* 640 P.2d 226 (Colo.1982), an interlocutory appeal of the trial court's initial order granting the defendant's suppression motion. The supreme court reversed and remanded to allow the development of evidence addressed to the proper standard. On remand, the trial court denied the defendant's motion to suppress as well as his motion to reconsider.

### I.

The defendant first contends that the trial court erred in denying his motion to suppress. He claims as grounds that the officers who seized the incriminating evidence (the gold watch) lacked the requisite knowledge to establish a connection between the seized article and criminal behavior. We disagree.

In *People v. Franklin, supra,* the supreme court established a new standard governing the suppression of evidence in plain view seized during the execution of a valid warrant that was issued for unrelated criminal activity and that does not describe the article seized. This standard requires the police officers to have present knowledge of facts which establish a "reasonable nexus" between the article seized and criminal behavior.

In applying this new standard to resolve the suppression issue, the *Franklin* court directed the trial court to examine the circumstances immediately preceding the seizure, including such factors as: (1) whether the articles seized were similar to other property particularly described in the warrant as stolen or to other items already discovered during the search; (2) whether the quantity and placement of the property were such that the property obviously was not on the premises for ordinary use; and (3) whether the police informant or others at the scene were able to supply any information about the seized property or were unable to identify it as stolen. *Franklin, supra.* Further, it must be immediately apparent to the police that they have incriminating evidence before them, and the prosecution has the burden of proof of establishing the propriety of the seizure. *People v. Henry,* 173 Colo. 523, 482 P.2d 357 (1971).

On remand, the trial court did as it was directed: It *considered* the totality of the circumstances surrounding the seizure, including the three factors explicitly stated. The trial court found that the prosecution's evidence on each factor was sufficient to deny the defendant's motion to exclude the seized property. Neither side contests the validity of the findings as to the first two factors. As to the third factor, however, the trial court found that the informant expressly identified the seized jewelry as stolen. The defendant and the prosecution have stipulated, and we agree, that the evidence does not support this finding.

The defendant argues that, absent this finding, the People have failed to sustain the burden of showing a reasonable nexus between the property seized and criminal behavior. Thus, the defendant interprets *Franklin, supra,* as requiring findings supported by the evidence as to all three factors articulated in the opinion. According to the defendant, the failure of one factor mandates suppression of the evidence. We disagree with this interpretation.

The supreme court expressly stated in its opinion that the trial court "must *consider*

*all* the circumstances immediately preceding the seizure, including *such factors as:"* the similarity between the item seized and those described in the warrant, the unusual location of the property, and the ability of the informant to supply information about the property. (emphasis added) While the use of the conjunctive "and" preceding the last factor lends support to the defendant's argument, we think the court would not have specified that the trial court must *consider all the circumstances* followed by a reference to the factors in an illustrative manner, *i.e.,* "such factors as," if it had intended to mandate that there be evidence and findings as to all of the itemized factors.

Footnote 7 in the *Franklin* opinion also casts doubt upon the importance to be accorded to the third factor. After referring to the discrepancy in the informant's testimony, the court said, in its footnote:

> "What is of *some significance* to a resolution of this matter on remand is not whether Ms. Lewallen identified the rings as stolen in the Black Hawk theft but whether during the course of the search she made statements to the officers giving them reasonable cause to believe the rings or other articles found in the crockpot were stolen." (emphasis added)

We are unable to discern from this language how much significance "some significance" has, but if it is the degree ascribed to it by the defendant, the adjective "some" must be read as meaning "paramount," so that this factor is of supreme importance, and is superior to all others. *See* Webster's New International Dictionary, p. 1773 (2d ed. 1954) defining "paramount." As such, its presence or absence is the dispositive consideration.

If, on the other hand, the word "some" in the footnote is intended to mean "some," as defined in Webster's New International Dictionary, pp. 2396–97 (2d ed. 1954), we are given six choices of meaning, none of which would be dispositive of this issue. We decline to rule that the supreme court rested so important an aspect of the case on a four-letter word of such ill-defined

meaning as "some," particularly when that word is included in the presumably tangential material in a footnote. Rather, we rest the case on the language in the text of the opinion, and since the trial court did *consider* all three factors, the inaccuracy of the finding on the last factor does not necessarily defeat its conclusion that a nexus did exist. *See People v. Superior Court,* 25 Cal.3d 67, 598 P.2d 877, 157 Cal.Rptr. 716 (1979); *State v. Scigliano,* 120 Ariz. 6, 583 P.2d 893 (1978).

■ Nevertheless, the question remains whether there was sufficient evidence, when *all* the circumstances are considered, and excluding the third factor, to establish the knowledge of the police officers that there was a nexus between the evidence seized and criminal behavior. We believe that there was sufficient evidence.

The following facts are uncontroverted: The police discovered the gold watch hidden in a suspicious location with another watch and some valuable rings. The watch was hidden in a bank deposit bag, then further enclosed in two smaller pouches. A name different from the defendant's was embroidered on the two pouches. The police had already found items described in the warrant as stolen property, and the property found in the bag and seized was similar, although not exactly the same.

This evidence of similar property stored in a highly unusual manner in an awkward location was sufficient to show that the police had present knowledge of facts which established a "reasonable nexus" between the gold watch and criminal behavior. *Franklin, supra.* The evidence supports the inference that there was criminal behavior, and the trial court correctly denied the defendant's motion to suppress.

## II.

The defendant next contends that it was reversible error for the trial court summarily to deny the jury's request for a transcript of testimony in the absence of both the defendant and his counsel. We disagree.

■ After deliberations have begun, the trial court has discretion to allow the jury to hear the testimony of one or more

witnesses. *Settle v. People,* 180 Colo. 262, 504 P.2d 680 (1972). Still, if the court communicates with the jury outside the presence of the defendant or his counsel, the defendant's constitutional right to be present at every critical stage of the proceedings has been violated. *Germany v. People,* 198 Colo. 337, 599 P.2d 904 (1979). All such constitutional violations, however, need not be reversible error if the appellate court can declare a belief that the error was harmless beyond a reasonable doubt. *Germany, supra, citing Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

■ There is nothing in this record showing that the defendant's case was in any way prejudiced by the trial court's decision. We therefore conclude that the constitutional error was harmless beyond a reasonable doubt.

### III.

The defendant next contends that he was denied his constitutional, as distinguished from his statutory, right to a speedy trial. We do not agree.

Since a speedy public trial is a relative concept, the circumstances of each case determine whether it has been afforded to the accused. *Medina v. People,* 154 Colo. 4, 387 P.2d 733 (1963). A reviewing court must assess both the conduct of the defendant and the prosecution in reviewing constitutional speedy trial cases. The four factors which the court must use in assessing such cases include: (1) the length of delay, (2) the reason for the delay, (3) whether the defendant asserted his right to a speedy trial, and (4) whether the delay caused prejudice to the defendant. *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *People v. Small,* 631 P.2d 148 (Colo.1981).

■ Here, it is especially significant that the defendant made no attempt to assert his right to a speedy trial in the three years prior to March 14, 1983. The seven-week delay caused by the two continuances initiated by the prosecution are not unreasonable in the light of the three years that had passed since initiation of the proceedings. The trial court concluded that the prosecu-

tion's missing witness was a justifiable reason for the first continuance. Likewise, the trial court found that the prosecuting attorney's personal reasons for the second delay were justifiable.

While the trial court did not articulate its specific reasoning in determining that the defendant was not prejudiced by the delays, several facts appear in the record bearing on the issue. First, the defendant spent only one day of pre-trial incarceration during the entire three-year period before the trial ended. Secondly, the defendant presented no evidence to show that he suffered a greater degree of anxiety and concern than that normally experienced by a criminal defendant. Lastly, the defendant failed to produce any evidence that the two delays caused by the prosecution created any possibility that his case was impaired. We conclude that the defendant has failed to meet the burden of showing his constitutional right to a speedy trial was denied.

We have considered the defendant's other assignments and find them to be without merit.

Judgment affirmed.

VAN CISE and METZGER, JJ., concur.