The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

Shirley BEROW, Defendant-Appellee.

The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

Walter LANE, Defendant-Appellee.

Nos. 83SA498, 83SA506.

Supreme Court of Colorado, En Banc.

Oct. 9, 1984.

John F. Healy, Dist. Atty., Kurt P. Schulke, Deputy Dist. Atty., Leadville, for plaintiff-appellant.

No appearance for defendant-appellee, Shirley Berow.

David F. Vela, Colorado State Public Defender, Kenneth M. Plotz, Deputy State Public Defender, Salida, for defendant-appellee, Walter Lane.

ERICKSON, Chief Justice.

This is an interlocutory appeal from a Lake County District Court order suppressing evidence seized from an apartment rented by the defendant, Shirley Berow. The district court suppressed the evidence after finding that the police officer's warrantless search violated the defendants' Fourth Amendment rights. We reverse.

## I.

The defendants, Shirley Berow and Walter Lane, occupied an apartment at the Highlander Hotel in Leadville, Colorado. In mid-January, 1983, the defendants had planned a vacation to California. Berow, who rented the apartment, was concerned that someone might break into the apartment while they were gone. She voiced her concern to the hotel's security and maintenance manager, Doyle Darby, and asked Darby to watch the apartment and to "arrest" any intruders. Darby assured Berow that he would "keep an eye" on the apartment.

At approximately 8:30 a.m. on January 24, 1983, Darby's wife, Linda, noticed that the hasps and locks on Berow's two apartment doors had been forcibly removed. She immediately informed her husband that the locks and hasps had been removed from the apartment's doors. When Doyle Darby went upstairs to investigate, he noticed that the hasps had been pried loose from the doors' frames and that one of the doors was cracked open a few inches. While inspecting the doors, he thought he saw movement inside the apartment. Linda Darby then called the Leadville police department and reported a burglary in progress. The Leadville police department dispatched Officer Jeffrey Huggins who arrived at the hotel at approximately 9:15 a.m. Officer Huggins met Doyle Darby, Linda Darby, and another resident of the hotel, Rose Warner, outside the defendants' apartment. Darby told Officer Huggins that the occupants of the apartment were in California and that they had requested that he watch the apartment and "prosecute" any intruders. Darby pointed out that the hasps and locks had been pried off both doors, and that the locks had been in place when he checked the apartment the previous evening. Officer Huggins and Darby then attempted to open one of the doors. However, a piece of furniture inside the apartment and a chain latch prevented the door from opening more than a few inches. The officer then attempted to open the second door. The officer testified that the second door was secured "by some type of lock you could only lock from the inside." [1]

Rose Warner, who lived directly across from the defendants' apartment, told the officer she had heard noises in the hallway during the night. She also said that someone had stuffed toilet tissue in the cracks in her door to obstruct her view of the hallway. During the investigation Linda Darby told the officer that she thought she had just seen movement inside the apartment.[2] On the basis of the facts set forth, the officer believed the apartment had been burglarized and that someone might be locked inside. The police officer concluded that he should forcibly enter the apartment and search for a burglar or burglars. Darby and the officer removed the molding from the frame of the second door. Darby

1. Officer Huggins testified that he believed the door could only be locked from the inside. However, Doyle Darby said that the door could be locked from either the inside, or from the outside with a key.

2. The record does not clearly indicate how Mrs. Darby could see into the apartment from her vantage point. Direct examination of Officer Huggins produced the following colloquy:

Q: Was there any discussion by anyone present as to whether there was anyone inside apartment 201?
A: Linda Darby related that she thought she saw some movement inside the apartment.
Q: Did she indicate how she could see this with the doors being closed?
A: No, I don't know. I don't know if she looked through a keyhole. I have no idea.
Q: Were the doors solid or opaque doors?
A: Solid doors, no glass.

then inserted a butter knife between the frame and the door and released the lock.

Once inside, Officer Huggins searched the kitchen, bathroom and bedroom areas of the apartment. He testified that he searched only those areas where a person could conceivably hide, and that he did not open drawers or rummage through the defendants' belongings. While the officer did not find a suspect or any indication of a burglary, he did see a hash pipe and a bag which appeared to contain marijuana on top of a dresser in the bedroom. He also saw a bucket on the kitchen table that appeared to contain marijuana plants.

The officer decided not to seize the contraband until he obtained a search warrant. After he secured a search warrant, he returned to the apartment and seized the marijuana and drug paraphernalia.[3]

At the suppression hearing, the defendants sought to suppress all the evidence Officer Huggins seized from the apartment. The defendants claimed that the officer's warrantless entry and search of the apartment violated their Fourth Amendment rights. The district court granted the defendant's motion and suppressed the evidence.

On appeal, the prosecution contends that under the totality of the circumstances the police officer acted lawfully in entering the apartment without a warrant. The prosecution claims that exigent circumstances justified the warrantless entry and search. A possible burglary was in progress and, in addition, the hotel's security and maintenance manager had the lessor's authority to consent to the search. Finally, the prosecution claims that the officer observed the contraband while lawfully on the premises and that he seized the evidence pursuant to a valid search warrant. We find the prosecution's arguments persuasive and therefore reverse the trial court's order suppressing the evidence.

**3.** In addition to the contraband which the officer had previously seen, Officer Huggins also seized other drug paraphernalia which he found

## II.

### A.

■ A warrantless search is justified if exigent circumstances exist which mandate immediate action by the police. *See, e.g., Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (pursuit of a fleeing felon); *People v. Clements,* 661 P.2d 267 (Colo.1983) (fear of explosion); *People v. Gomez,* 632 P.2d 586 (Colo.1981), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982) (risk of immediate destruction of evidence); *People v. Williams,* 200 Colo. 187, 613 P.2d 879 (1980) (fear that evidence would be destroyed); *People v. Amato,* 193 Colo. 57, 562 P.2d 422 (1977) (emergency threatening the life or safety of another).

■ Under the exigency exception, a police officer may enter private property without a warrant when he reasonably believes that the premises have been or are being burglarized. *United States v. Estese,* 479 F.2d 1273 (6th Cir.1973); *Carter v. State,* 405 So.2d 957 (Ala.Crim.App. 1981); *Commonwealth v. Fiore,* 9 Mass. App. 618, 403 N.E.2d 953, *cert. denied,* 449 U.S. 938, 101 S.Ct. 336, 66 L.Ed.2d 160 (1980); *State ex rel. v. District Court,* 180 Mont. 548, 591 P.2d 656 (1979). In the cases cited above, the courts have recognized that the officer's urgent need to search for a burglar and protect the occupant's property justifies the warrantless entry and search. *See also* 2 W. LaFave, *Search & Seizure,* § 6.6(b) 473–75 (1979).

■ In the present case, the officer had reason to believe that a burglary was in progress and that the burglar had possibly barricaded himself inside the apartment. The locks and hasps on the apartment doors had been forcibly removed and a witness had reported seeing movement inside the apartment. Given the above facts, the officer reasonably believed that immediate action was necessary to protect the defendants' property. Under the circum-

under the defendants' couch and inside the refrigerator.

stances, we refuse to second-guess the officer's decision to search the apartment.[4]

■ Not only did the officer enter the apartment in response to exigent circumstances, he also reasonably relied on the authority of Doyle Darby to permit a search.[5] Consent to search an apartment need not be expressly given by the tenant, but can be obtained from a third party who possessed either "common authority" over the property or some other "sufficient relationship." *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). Moreover, consent need not be explicit, but can be implied from the "totality of the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973); *United States v. Sor-Lokken*, 557 F.2d 755 (10th Cir.), *cert. denied*, 434 U.S. 894, 98 S.Ct. 274, 54 L.Ed.2d 181 (1977).

■ Examining the evidence in its entirety we conclude that Doyle Darby had been given sufficient authority over the apartment to permit a search. Specifically, the apartment's tenant, Shirley Berow, had asked Darby to watch the apartment and "arrest intruders." In addition, Darby had a "substantial interest" in protecting the apartment as the hotel's security and maintenance manager. Under the totality of the circumstances, we conclude that Darby possessed the "necessary appearance of au-

thority demanded by *Matlock*" to consent to the search. *See United States v. Sells*, 496 F.2d 912, 914 (7th Cir.1974); *United States v. Peterson*, 524 F.2d 167, 180 (4th Cir.), *cert. denied*, 423 U.S. 1088, 96 S.Ct. 881, 47 L.Ed.2d 99 (1975).

### B.

■ Because the officer entered the apartment under exigent circumstances and with Doyle Darby's permission, his incidental discovery of the contraband on the bedroom dresser and the kitchen table is lawful under the "plain view" doctrine. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). In order for the plain view doctrine to apply, a police officer must have a "prior justification for an intrusion in the course of which he [comes] inadvertently across the piece of evidence incriminating the accused." *People v. Franklin*, 640 P.2d 226, 229 (Colo. 1982) (quoting *Coolidge*, 403 U.S. at 465–66, 91 S.Ct. at 2037–38). In the present case, all the requirements needed to invoke the plain view doctrine have been established. The officer inadvertently discovered the contraband while lawfully on the premises, both in response to the exigencies of a possible burglary and with Darby's consent. In addition, the officer did

---

**4.** As Chief Justice (then judge) Burger stated in *Wayne v. United States:*

[A] warrant is not required to break down a door to enter a burning home to rescue occupants or extinguish a fire, to prevent a shooting or to bring emergency aid to an injured person. The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency. Fires or dead bodies are reported to police by cranks where no fires or bodies are to be found. Acting in response to reports of "dead bodies," the police may find the "bodies" to be common drunks, diabetics in shock, or distressed cardiac patients. *But the business of policemen and firemen is to act, not to speculate or meditate on whether the report is correct. People could well die in emergencies if police tried to act with the calm deliberation associated with the judicial process.*

318 F.2d 205 (D.C.Cir.), *cert. denied*, 375 U.S. 860, 84 S.Ct. 125, 11 L.Ed.2d 86 (1963) (emphasis added).

**5.** We recognize that a landlord, by virtue of his status alone, cannot consent to a search of a tenant's apartment. *Chapman v. United States*, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961); *People v. Boorem*, 184 Colo. 233, 519 P.2d 939 (1974). Nor can a hotel clerk authorize a search of a customer's room. *Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). The above decisions, however, do not affect our holding. In the present case, Doyle Darby was more than just the "manager" of the hotel. He was also responsible for the hotel's security and maintenance. In addition, he had been instructed to watch the defendants' apartment and to "arrest intruders." We believe that the authority granted to Darby, in combination with the existence of a possible burglary in progress, distinguish the present case from *Chapman, Boorem,* and *Stoner.*

not deviate from the original purpose of the search. The officer searched only those areas where a person could conceivably hide and did not open drawers or rummage through the defendants' belongings. *Compare Condon v. People,* 176 Colo. 212, 489 P.2d 1297 (1971). After the officer discovered the marijuana, he returned to the police station and obtained a warrant. Only after securing a search warrant did the officer seize the drugs and drug paraphernalia.

Accordingly, we conclude that the officer seized the evidence pursuant to a valid warrant, and we reverse the trial court's order suppressing the evidence.

LOHR, J., does not participate.