The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

West Rodrick RIVERS, Defendant-Appellant.

No. 84CA1192.

Colorado Court of Appeals, Div. II.

May 15, 1986.

Rehearing Denied June 19, 1986.

Certiorari Denied (Rivers) Oct. 14, 1986.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Maureen Phelan, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David A. Palmer, Grand Junction, for defendant-appellant.

SMITH, Judge.

Defendant, West Rodrick Rivers, appeals the judgment of conviction and the sentence imposed that were entered upon a jury verdict of guilty of second degree murder and felony theft. We affirm.

Defendant was charged with first degree murder and felony theft stemming from the death of his wife. The evidence at trial and the suppression hearing established that the victim was last seen on a Friday evening outside the trailer which she shared with defendant. The following day defendant was seen outside the trailer, but appeared reluctant to invite others inside. On that Sunday, the defendant drove away in his employer's truck with his two dogs, and did not return to the padlocked trailer.

The next Wednesday the trailer park owners heard complaints about an offensive odor emanating from the Rivers' trailer. One of the owners called the sheriff's office, and an investigator came out. The owner accompanied the deputy sheriff to the trailer and unlocked the padlock with a key that had been given to the owners a few weeks previously by defendant. The deputy entered the trailer and discovered the wife's decomposing body. The deputy left and called an investigating team. The team, including the coroner, came out and took photographs of the body in its original position and then removed it. Later the sheriff's department secured a search warrant, and made a detailed search of the premises.

The defendant was not arrested until almost three years after the victim's death. The arrest occurred in a fishing camp in Texas where defendant had rented a cabin under an alias. A Texas sheriff's deputy, relying solely on the Colorado arrest warrant, knocked on the door of defendant's cabin and asked defendant to step outside. Defendant was placed under arrest after he stepped outside his door. After he was arrested, defendant asked to go inside to get some cigarettes. When the deputy accompanied him inside he saw several items which were later seized and used as evidence at trial.

## I. SEARCH OF THE TRAILER

Defendant contends that the initial entry into and search of his trailer were illegal because they were not conducted under a warrant and did not fall under any of the exceptions to the Fourth Amendment warrant requirement. We do not agree.

The testimony at the suppression hearing established that defendant and the victim had given the key to the trailer's padlock to the trailer park owners on two occasions when they had left town on business. The owners were instructed to use the key in case of fire or other emergency. On the first occasion the Rivers retrieved the key when they returned, but the second time they did not get it back. The trial court found that, by giving the park owners the key, the defendant had given them authority to consent to a search of his trailer under the circumstances.

Defendant contends that the court's ruling is erroneous. He argues that the defendant's authorization to enter applied only to emergency situations. He cites *Condon v. People*, 176 Colo. 212, 489 P.2d 1297 (1971) for the proposition that the odor of a dead body is not an exigent circumstance which justifies a warrantless

entry. He further argues, citing *Chapman v. United States*, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961), that, absent an emergency justifying a warrantless entry, the park owners lacked the authority to consent to a search on behalf of defendant.

Consent to a search of a dwelling need not be obtained from the owner, if it is obtained from a third party who possesses "common authority" over the property or some other "sufficient relationship" with it. *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1973); *People v. Berow*, 688 P.2d 1123 (Colo.1984). Consent may be explicit, or it may be inferred from the totality of the circumstances. *People v. Berow, supra.*

Valid consent has been inferred in several cases where the individual giving the consent had been entrusted with a key by the individual seeking to suppress the evidence discovered. *United States v. Sellers*, 667 F.2d 1123 (4th Cir.1981); *United States v. Sor-Lokken*, 557 F.2d 755 (10th Cir.1977); *People v. Berow, supra.*

Here, we need not reach the question of whether the defendant's qualified entrustment of the key to the park owners gave them blanket authority to consent to a search because defendant explicitly granted them the authority to enter in case of an "emergency." The requisite emergency need not be an exigency sufficient by itself to waive the warrant requirement. Any event understood by the park owners to be so unusual as to require investigation suffices. *See People v. Berow, supra.* Here, an odor that was unpleasant enough to cause complaints from other park residents was adequate to constitute an "emergency" sufficient to allow the park owners to enter the trailer and investigate its source.

## II.  ARREST

Defendant next contends that his arrest was unlawful because it was effected in the defendant's home not pursuant to a warrant based on probable cause. His contention is without merit.

A warrant for the arrest of defendant was issued by a magistrate in Colorado based upon probable cause. Through a check of defendant's criminal record, the Texas sheriff's deputy became aware of the outstanding Colorado warrant. However, rather than use the Colorado warrant as a basis for the issuance of a Texas warrant, the deputy proceeded to arrest defendant solely on the Colorado warrant.

A warrantless arrest of a suspect in his home, even if that arrest is based on probable cause, is a violation of the individual's Fourth Amendment rights. *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). However, a warrantless arrest of an individual in a public place based on probable cause does not violate the Fourth Amendment, even absent exigent circumstances. *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). While a valid warrant issued by a foreign jurisdiction may serve to establish probable cause for a warrantless arrest or the issuance of a warrant, *see People v. Gouker*, 665 P.2d 113 (Colo.1983), it does not by itself serve as a warrant. *See* § 16–19–115, C.R.S. (1978 Repl.Vol. 8). Therefore, defendant's arrest in Texas was valid only if he was in a public place at the time it was made.

Generally, if a suspect steps onto his stoop or into his doorway so that he is in public view before being arrested a warrantless premised on probable cause arrest is valid. *United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976).

Here, the court found, on supporting evidence, that defendant was not enticed to his doorway by improper means. Therefore, the deputy's knowledge of the Colorado warrant served as probable cause on which he effected a valid warrantless arrest in a public place.

## III. CONFESSION

Defendant's third contention is that his confession to a co-worker should have been suppressed because it was involuntary as a result of his extreme intoxication. We perceive no error.

The degree of a person's intoxication is relevant to his mental state and, therefore, may be pertinent in determining a statement's voluntariness. *See People v. Connelly*, 702 P.2d 722 (Colo.1985). (cert. granted, —— U.S. ——, 106 S.Ct. 785, 88 L.Ed 2d 763 (1986)), and *People v. Helm*, 633 P.2d 1071 (Colo.1981). Here, however, the trial court found that defendant was not intoxicated when he made the statement, and it was "made in the course of coherent conversation between the two parties concerning their mutual family problems." That finding being supported by adequate evidence in the record is binding on us. *People v. Fordyce*, 200 Colo. 153, 612 P.2d 1131 (1980).

## IV. VOIR DIRE

Defendant contends that the trial court erred when it denied his motion to voir dire members of the jury panel individually with respect to their attitude towards alcoholism. While defendant did question prospective jurors with respect to alcoholism, he contends that the fact that the questioning occurred in open court so inhibited the panel members that he was unable to assess accurately their attitudes toward alcoholism. Defendant's contention is without merit.

It is within the discretion of the trial court to limit the scope and conduct of voir dire in the interest of judicial economy. *People v. Saiz*, 660 P.2d 2 (Colo.App.1982). Here, the defendant was given an opportunity to question prospective jurors on their attitude towards alcoholism, albeit in open court. Under the circumstances, we find no abridgment of defendant's rights or abuse of the trial court's discretion.

## V. DISCOVERY MATTERS

Defendant contends that the trial court erred when it denied him a continuance after interviews with prosecution witnesses divulged felony records which had not been disclosed to defendant prior to trial. We disagree.

Material to be used for impeachment purposes is subject to the discovery provisions of Crim.P. 16, including the provision that the prosecutor perform his obligation as soon as practicable following the filing of charges. Crim.P. 16(I)(b)(1); *People v. Thatcher*, 638 P.2d 760 (Colo.1981). However, evidence is generally not considered improperly withheld if the defendant has knowledge of it, and mere technical non-compliance does not require the imposition of sanctions by the trial court. *People v. Graham*, 678 P.2d 1043 (Colo.App.1983).

Here, the trial court ordered disclosure of the criminal records of prosecution witnesses. When it became apparent at trial that certain prosecution witnesses had criminal records which had not previously been discovered by the prosecution, the trial court ordered computer checks done on each witness over the night recess. When the computer checks turned up no information which had not already been disclosed to the defendant by the prosecution, the trial court specifically found that the prosecution had complied with the discovery order. Because no new information was unearthed by the tardy computer search, the trial court did not abuse its discretion in denying defendant's motion for continuance.

## VI. SIMILAR TRANSACTION EVIDENCE

Defendant also contends that the trial court erroneously admitted evidence that he had threatened and struck the victim on occasions prior to the assault that caused her death. He argues that the prejudicial effect of this evidence so far outweighs its probative value that it is inadmissible even for limited purposes. This contention is meritless.

Evidence of prior criminal transactions is admissible only if the trial court finds: (1) the evidence is admitted for a valid purpose; (2) the evidence is relevant to a material issue in the case; and (3) the probative value of the evidence outweighs its prejudicial effect. *People v. Honey,* 198 Colo. 64, 596 P.2d 751 (1979). The trial court must also instruct the jury at the time the evidence is admitted that it may only be considered for limited purposes. *Stull v. People,* 140 Colo. 278, 344 P.2d 455 (1959).

Here, the trial court properly instructed the jury that it could consider the similar transaction evidence to establish identity, motive, and intent. Because the evidence of the crime was circumstantial, identity, intent, and motive appeared to be material issues at the time the evidence was admitted (although defendant later conceded identity). However, the trial court was less than explicit in its finding that the probative value of the evidence outweighed its prejudicial effect.

Trial court errors do not require reversal unless they affect the substantial rights of a defendant. Crim.P. 52(a). In light of defendant's concession in closing argument of his identity as the person who killed the victim, his reliance on intoxication to disprove intent, and the jury's verdict of not guilty to first degree murder, we hold that any prejudice resulting from admitting the similar transaction evidence was harmless error.

## VII. EXPERT OPINION TESTIMONY

Defendant further contends that the pathologist's testimony that the attack on the victim occurred in two stages was improper because it went directly to an ultimate issue in the case, *i.e.,* whether the killing was "after deliberation." This contention is without merit.

Pursuant to CRE 704, an expert or other witness is not precluded from expressing an opinion with respect to an ultimate factual issue. *People v. Martinez,* 43 Colo.App. 419, 608 P.2d 359 (1979). Fur-

thermore, defendant was acquitted of first degree murder "after deliberation." There was no error in admission of this evidence.

## VIII. VOLUNTARY INTOXICATION DEFENSE

The defendant also contends that the defense of voluntary intoxication should be available to rebut the *mens rea* requirement of second degree murder. However, based on the common-law tradition, our General Assembly has determined for policy reasons that voluntary intoxication is not available as a defense to general intent crimes, including second degree murder. *See* § 18–1–804(1), C.R.S. (1978 Repl.Vol. 8); *People v. DelGuidice,* 199 Colo. 41, 606 P.2d 840 (1979).

## IX. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends that his counsel's concession in closing argument that the evidence showed that defendant had killed the victim constituted ineffective assistance of counsel and entitled him to a new trial. We disagree.

A defendant whose counsel performs within the range of competence demanded of attorneys in criminal cases is not denied effective assistance of counsel. *People v. Wimer,* 681 P.2d 967 (Colo.App. 1983). A disagreement with counsel about strategy decisions does not demonstrate that there was ineffective assistance of counsel. *People v. Swainson,* 674 P.2d 984 (Colo.App.1983).

Here, the defense presented a single witness: an expert on alcoholism who opined that defendant was an alcoholic who had incurred brain damage as a result of that alcoholism. When faced with overwhelming, unrebutted (although circumstantial) evidence that defendant had killed the victim, defense counsel's decision to concentrate on the defense of voluntary intoxication constituted a sound strategic decision. Despite the fact that defendant may have disagreed with that decision at

the time of trial, he received effective representation.

## X.  CUMULATIVE ERROR

Defendant's final contention with respect to the judgment of conviction is that cumulative errors prevented him from having a fair trial.  Defendant particularly relies on the trial court's denial of his motion for mistrial made after a prosecution witness made certain inadmissible statements with respect to similar transactions by the defendant.  We find no reversible error.

The grant or denial of a mistrial rests within the broad discretion of the trial court.  *People v. Nunez*, 684 P.2d 945 (Colo.App.1984).  Furthermore, a mistrial is a drastic measure which is only appropriate when the prejudice cannot be cured by other means.  *People v. Abbott*, 690 P.2d 1263 (Colo.1984).

Here, the trial court instructed the jury to disregard the statement.  In light of the brevity of the remark, the fact that it was not unduly noteworthy, and the fact that defense counsel conceded defendant's identity as the killer, the trial court did not abuse its discretion in denying the mistrial motion.

The doctrine of cumulative error requires that numerous errors be committed, not merely alleged.  *People v. Jones*, 665 P.2d 127 (Colo.App.1982), *aff'd sub nom., People v. Curtis*, 681 P.2d 504 (Colo.1984).  Here, defendant's lengthy trial and the unique circumstances of the offense give rise to many contentions of error.  However, none rise to the level of reversible error, either separately or cumulatively.

## XI.  SENTENCING

Defendant contends that the court erred in sentencing him to a term in the aggravated range.  He argues that the trial court erroneously excluded a videotaped interview with him while he was under hypnosis by a psychologist.  He contends that the interview presented evidence of mitigation which would have precluded the imposition of a sentence in the aggravated range.  His contention is without merit.

Here, the trial court's findings establish that the imposition of an aggravated sentence was based upon the defendant's long criminal history.  The circumstances of the offense did not significantly enter into its determination of the sentence.  Defendant's interview under hypnosis dealt solely with his recollection of the circumstances of the offense.  Therefore, any error in excluding the videotape of the hypnosis session did not affect defendant's sentence and is harmless.  *See* Crim.P. 52(a).

Judgment and sentence affirmed.

BERMAN and VAN CISE, JJ., concur.