**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellant,**

v.

**Emmett H. GRAZIER, Defendant–**
**Appellee.**

**No. 99SA277.**

Supreme Court of Colorado,
En Banc.

Jan. 18, 2000.

Frank J. Daniels, District Attorney, Twenty–First Judicial District, Richard B. Tuttle, Deputy District Attorney, Twenty–First Judicial District, Grand Junction, Colorado, Attorneys for Plaintiff–Appellant.

---

Law Offices of Colleen B. Scissors, Colleen B. Scissors, Grand Junction, Colorado, Attorneys for Defendant–Appellee.

Justice HOBBS delivered the Opinion of the Court.

In this interlocutory appeal under C.A.R. 4.1 and section 16–12–102(2), 6 C.R.S. (1999), the prosecution challenges an order of the Mesa County District Court suppressing evidence seized by police through warrantless entry into a residence, evidence seized through a search warrant the police obtained on the basis of evidence discovered in the residence, and statements the defendant Emmett Grazier (Grazier) made during custodial interrogation at the county jail following a *Miranda* advisement. The police entered the residence as the result of a neighbor's 911 report that a burglary might be in progress. Finding and concluding that probable cause and exigent circumstances did not support the warrantless entry, the trial court suppressed all evidence resulting therefrom. We affirm the trial court's order.

## I.

On November 6, 1998, several Grand Junction police officers responded to a neighbor's 911 report of a possible burglary in progress at an apartment[1] in Grand Junction. The transcript of the telephone report states:

> Caller: Yes, I'm not sure if this is the number I'm suppose[d] to be calling or not. I live in an apartment complex and I just saw some guys go through the window of an apartment building. I don't believe they live there, but I don't even know for sure. And since they went in, he let another one in the front door and then they pulled the curtains.

After the 911 dispatcher asked questions regarding the location of the apartment and ascertained the caller's identity, the brief telephone conversation concluded as follows:

> Dispatch: Okay. I've got some officers that are headed that way and if they need to

---

1. The transcript of the evidentiary hearing variously refers to the residence as an apartment or two-story town home.

contact you we'll just have them call then.

Caller: Okay. And I'm going to feel stupid if it's somebody that lives there, but it looks really ...

Dispatch: Well it's better to be safe th[a]n sorry.

Caller: Okay. Thanks.

Four officers responded to the call. Officer Curt Moreno (Moreno) went to the north side of the apartment while the three other officers remained by the front door. Looking through a window, Moreno saw a man sitting on a couch in the living room. Upon returning to the other officers, Moreno reported recognizing the man as Damon Thompson (Thompson), a person known to him from prior drug-related police contacts.

The officers knocked on the front door; Thompson answered. Without questioning him about whether he lived there or the identity and reason for presence of the other man seen entering the apartment, the officers immediately handcuffed Thompson and entered the residence. They saw no indication of a burglary in progress. Moreno and Officer William Baker (Baker) proceeded to the bathroom because they heard the shower running. They pulled back the shower curtain, began to question Grazier, extracted him from the shower, handcuffed him, and brought him and his clothes into the living room.

Grazier said he did not live in the apartment and did not know who did. Observing a large knife on the outside of his pants, Baker asked Grazier if he had any other weapons. Grazier responded that he had a small pocket-knife in his pants. Baker felt the knife in the pocket, turned the pocket inside out, and discovered a small, clear bag that police suspected contained methamphetamine. A further search of Grazier's pockets revealed $700.00 in cash. The officers opened Grazier's wallet and discovered an additional $106.00 in cash. While the police searched Grazier's effects, one of the officers ascertained from a phone conversation with Thompson's girlfriend that Thompson lived in the apartment with her.

The police transported Grazier to the Mesa County Detention Facility where, after being advised of his *Miranda* rights, he made several incriminating statements. Using the information and evidence gained from entry into the residence, the police obtained a warrant for a further search of the premises. In executing the warrant, officers found "pay-owe" sheets recording apparent drug transactions, drug paraphernalia, and additional packets of methamphetamine located in Grazier's fanny pack.

The prosecution charged Grazier with possession of a schedule II controlled substance, *see* § 18-18-405(1)(a), 6 C.R.S. (1999), use of a schedule II controlled substance, *see* § 18-18-404(1)(a), 6 C.R.S. (1999), possession of a schedule II controlled substance with the intent to distribute, *see* § 18-18-405(1)(a), and possession of drug paraphernalia, *see* § 18-18-428, 6 C.R.S. (1999). On March 30, 1999, Grazier filed a motion to suppress all evidence resulting from the warrantless entry of the residence, the search and seizure of his effects, and all statements he made to police.

On August 4, 1999, following an evidentiary hearing, the trial court granted Grazier's motion. The trial court found and concluded there was: (1) no probable cause to believe that a burglary was in progress; and (2) no exigent circumstances justifying the warrantless entry:

> [T]he only fact which would lead the police to conclude that the apartment was being burglarized was the call made to the police from the neighbor, who had also expressed some doubt as to whether the people she saw enter lived there. Once the police arrived and observed the person they knew to be Damon Thompson sitting on the couch appearing to be doing nothing other than sitting on the couch, the exigency began to dissipate. When they knocked on the door and he answered, there was no longer any sort of a discernable emergency existing in the apartment justifying their warrantless, non-consensual entry. Further, the few facts that the police learned since their arrival at this apartment cast considerable doubt on the proposition that there was a burglary at

all. After Damon Thompson answered the door, there was in fact no probable cause to believe a burglary was in progress. At that point a reasonable person would conclude that whoever entered the apartment through the window had done so because he probably had locked his key inside.

The trial court based its decision on the reasonableness standard of the Fourth Amendment. It determined – in light of observations made by the police dispelling the neighbor's suspicion of a burglary in progress—that the police did not act reasonably in failing to question Thompson as to who lived in the apartment and in pulling Grazier, a guest of Thompson, from the shower, handcuffing him, and bringing him into the living room where they further questioned him and searched his personal effects. The trial court stated:

> Despite the fact the police saw no objective signs of any sort of burglary in progress, they did not seek any explanation from Mr. Thompson as to who lived there, who else was in the apartment, how he entered the apartment, and under what authority, if any, he was in this apartment. Under these circumstances it is particularly unreasonable for the police to barge into the bathroom where someone is clearly showering and to pull that person out of the shower, handcuff him, and escort him into the living room.

The trial court suppressed all evidence resulting from the warrantless entry of the apartment. We affirm the trial court's order.

## II.

The evidence supports the trial court's findings of fact and conclusions of law that the police officers lacked probable cause for their warrantless entry of the residence and their search and seizure of Grazier's person and effects.

### A. Probable Cause

■ The Fourth Amendment to the United States Constitution and Article II, section 7, of the Colorado Constitution prohibit unreasonable searches and seizures.[2] The requirement of a warrant based on probable cause is the principal protection against governmental intrusion upon a person's reasonable expectation of privacy in his or her residence, person, and effects. *See, e.g., People v. Holmes,* 981 P.2d 168, 170–71 (Colo. 1999); *People v. O'Hearn,* 931 P.2d 1168, 1173 (Colo.1997). "In the absence of probable cause to believe that a crime has been committed and exigent circumstances necessitating immediate police action, warrantless entry into a home is proscribed." *People v. Lewis,* 975 P.2d 160, 167 (Colo.1999).

■ Fourth Amendment jurisprudence turns on "whether the conduct of offending officers meets the objective standard of 'reasonableness.'" *People v. Mendoza–Balderama,* 981 P.2d 150, 157 (Colo.1999). The probable cause requirement for a warrantless entry is at least as strict as that required for issuance of a warrant. *See People v. Thompson,* 185 Colo. 208, 210, 523 P.2d 128, 131 (1974). Probable cause is a flexible standard deriving from a common sense concept of reasonableness. *See People v. Higbee,* 802 P.2d 1085, 1088 (Colo.1990). "Probability, not certainty, is the touchstone of reasonableness under the fourth amendment and ... probable cause involves probabilities similar to the factual and practical questions of everyday life upon which reasonable and prudent persons act." *People v. MacCallum,* 925 P.2d 758, 762 (Colo.1996).

**2.** The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

The Colorado Constitution provides:

> The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures; and no warrant to search any place or seize any person or things shall issue without describing the place to be searched, as near as may be, nor without probable cause, supported by oath or affirmation reduced to writing.

Colo. Const. art. II, § 7.

▆ Reasonableness is measured in objective terms. *See Mendoza–Balderama,* 981 P.2d at 157. In ascertaining the existence or non-existence of probable cause, courts examine the totality of the facts and circumstances at the time of the warrantless entry and search. *See Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *People v. Leftwich,* 869 P.2d 1260, 1265 (Colo.1994) (recognizing that Colorado has adopted the totality of the circumstances test formulated in *Gates* ). The totality of the circumstances analysis places particular importance on the fact that suspicion alone does not rise to the level of probable cause. *See Lewis,* 975 P.2d at 169 (holding that suspicion alone, even if reasonable, does not provide a legal basis upon which an officer may enter a residence and conduct searches and seizures therein); *see also People v. Schafer,* 946 P.2d 938, 945 (Colo.1997). When a citizen report prompts police action, and the informant's identity is known, the issue is not whether the information obtained from direct observation is credible but, rather, whether it is complete and specific enough to constitute probable cause for entry and search. *See* 2 Wayne R. LaFave, *Criminal Procedure* § 3.3(d) (1999).

### B. Exigent Circumstances

▆ Warrantless entry into a residence is presumptively unreasonable. *See Mendoza–Balderama,* 981 P.2d at 156. The prosecution bears the burden of showing that both probable cause and exigent circumstances existed justifying the warrantless entry. *See Mendez v. People,* 986 P.2d 275, 280 (Colo. 1999). A warrantless search, when based on the existence of probable cause, is justified if exigent circumstances exist that necessitate immediate action by the police. *See, e.g., id.* at 279; *McCall v. People,* 623 P.2d 397, 402 (Colo.1981). There are three situations in which exigent circumstances justify a warrantless search: (1) the police are engaged in "hot pursuit" of a fleeing suspect; (2) there is a risk of immediate destruction of evidence; or (3) there is a colorable claim of emergency threatening the life or safety of another. *See People v. Kluhsman,* 980 P.2d 529, 534 (Colo. 1999).

▆ The third exigency is the one we have invoked in our burglary cases. Police officers may enter private property without a warrant when they have probable cause to believe that a burglary has just recently occurred or may be in progress, in order to secure the premises and search for suspects or victims. The exigency justifying entry in our burglary cases flows almost as a matter of course from the facts establishing probable cause to believe that a burglary is in progress or has just recently occurred. *See People v. Unruh,* 713 P.2d 370, 379 (Colo. 1986); *People v. Berow,* 688 P.2d 1123, 1126 (Colo.1984). Because suspects or victims may still be in the residence and there is an immediate need to protect the resident's property, the police may enter. *See, e.g., Berow,* 688 P.2d at 1126 ("In the present case, the officer had reason to believe that a burglary was in progress and that the burglar had possibly barricaded himself inside the apartment.").

▆ Courts of other jurisdictions agree that where police have probable cause to believe that a burglary is either in progress or has just recently been committed, the exigencies of the situation permit the officers to enter the premises without a warrant to search for intruders and to protect an occupant's property. *See, e.g., Carroll v. State,* 335 Md. 723, 646 A.2d 376, 382 (1994) (citing *Berow,* 688 P.2d at 1127–28). The nature of the exigency, based on observations made by the officers at the scene, controls the entry and search; the officers may seize incriminating evidence discovered in plain view without a warrant only if they are legitimately on the premises. *See Unruh,* 713 P.2d at 379. In determining whether an exigency exists, courts must examine the totality of the circumstances and "evaluate those circumstances as they would have appeared to a prudent and trained police officer at the time of the challenged entry." *People v. Malczewski,* 744 P.2d 62, 66 (Colo.1987).

Our discussion of exigency in prior burglary cases involving a challenged entry assumed the existence of probable cause. *See, e.g., Unruh,* 713 P.2d at 378 ("Moreover, even in the limited types of situations in which a warrantless search or seizure might

be justified, the requirement of probable cause to obtain a warrant has generally been retained."). In *Unruh*, 713 P.2d at 379–80, the police lawfully entered a house that appeared to have been burglarized. The officers located the house based on information from a suspect and observed that the door was open and the doorjamb splintered. In *Berow*, 688 P.2d at 1126, the police responded to an apartment manager's report of a possible burglary in progress at the apartment of a resident known to be out of town. The officer observed that the hasps and locks on the apartment door had been forcibly removed, the door was open, and there was movement within the apartment.

In the case before us, the trial court found that the police lacked both probable cause and exigent circumstances for the warrantless entry of the residence and the subsequent search and seizures. We need not reach the issue of exigent circumstances because we agree with the trial court that probable cause did not exist here.

### C. The Warrantless Entry, Search, and Seizure in this Case

 As the reviewing court, we defer to the trial court's findings of fact if they are supported by the record. *See Mendoza–Balderama*, 981 P.2d at 158. We do not substitute our judgment for that of the trial court unless its findings are clearly erroneous or lack evidentiary support. *See id.* The legal effect of the operative historical facts constitutes a question of law which is subject to de novo review. *See People v.*

*Winpigler*, No. 99SA272, —— P.2d ——, ——, 1999 WL 1095470, *3 (Colo. Dec.6, 1999).

 The prosecution argues the existence of probable cause based solely on a neighbor's 911 report of a possible burglary in progress. She reported observing one man enter the apartment through a window and then open the door to let another man into the apartment. She did not think either of the men lived in the apartment, but she was concerned about being mistaken.

The trial court found that the "police saw no objective signs of any sort of burglary in progress" to support the neighbor's suspicion. Unlike *Unruh* and *Berow*, these officers had no report of the residents being on vacation or away from home; they observed no signs of forced entry; they did not hear any noises, see any movement, or observe any other circumstances suggesting a burglary. To the contrary, the officers observed through the window a man who appeared to be comfortably at home sitting on a couch. He answered the front door when they knocked. He was not armed; he presented no apparent threat to the officers. Instead of announcing the reason for their presence and attempting to ascertain whether he and the other man were on the premises legitimately, they immediately handcuffed Thompson, a resident, and proceeded to question, handcuff, and search his guest who was taking a shower.[3]

 Based on evidentiary facts of record,[4] the trial court determined that the po-

3. Grazier argued in his motion to suppress that he had standing to maintain his motion. The prosecution did not contest Grazier's standing.

4. Officer Baker testified to the following observations:

 [Defense]: Had you made any previous arrests at that particular apartment?
 [Baker]: No, ma'am.
 [Defense]: When Officer Moreno saw Mr. Thompson inside the apartment, is it your recollection that Mr. Thompson was sitting on the couch?
 [Baker]: That is correct.
 [Defense]: Do you remember what he was doing?
 [Baker]: I didn't see him, no.
 [Defense]: Did you hear a television?
 [Baker]: I did not, no.

 [Defense]: Did you hear a stereo?
 [Baker]: No that I recollect, no.
 [Defense]: Were there any sounds inside the apartment that you were able to hear as you were outside waiting to go in?
 [Baker]: Not that I recollect, no.
 [Defense]: Now, prior to your entry into the apartment, did you or to your knowledge did any other officer with you make any effort to determine whose apartment it was?
 [Baker]: Not that I know of, no.
 [Defense]: Did you or did any other officer, as best you know, make any effort to contact the apartment manager?
 [Baker]: No, we did not.
 [Defense]: Did you or did any other officer attempt to contact the 911 caller?
 [Baker]: No, we did not.
 . . .

lice officers' observations on the scene did not establish probable cause to believe that there was a burglary in progress. The police are expected to use their "knowledge, experience, and training" in making observations and conducting investigations, and to proceed reasonably under the circumstances. *See People v. Pate*, 705 P.2d 519, 522 (Colo.1985). The two men within the apartment were acting nonchalantly, as if they belonged there. Taking into account the facts known to the police, the trial court found that "a reasonable person would conclude that whoever entered that apartment through the window had done so because he probably had locked his key inside."

We agree with the trial court's conclusion of law, based on the record and its factual findings, that probable cause did not exist for this warrantless entry, search, and seizure. The prosecution bore the burden of proving both probable cause and exigent circumstances to believe that a burglary was occurring which required the police to immediately respond. The prosecution did not meet its burden. Hence, it may not use the evidence gained from the warrantless entry, nor its fruits. *See Wong Sun v. United States*, 371 U.S. 471, 484–85, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Winpigler*, —— P.2d at ——, 1999 WL 1095470 at *3. The trial court correctly granted Grazier's motion to suppress the evidence found in the pockets of his pants, other items of his found in the apartment and his fanny pack, and his statements to police.

### III.

Accordingly, we uphold the trial court's suppression order and return the case to it for further proceedings.

[Defense]: When Mr. Thompson opened the door, did you have any conversation with him at that point?

[Baker]: No, I did not.

[Defense]: Did any other officer in your presence have any conversation with him?

[Baker]: Not that I recollect.

. . .

[Defense]: And when you went into the apartment, did you see any burglar tools?

[Baker]: No.

[Defense]: Did you see any containers or valises that would be used for carrying stolen goods?

[Baker]: Not that I recollect, no.

[Defense]: Was there anything piled up in the apartment as if it was being gathered together to be stolen?

[Baker]: Not that I noticed, no.